# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN D. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-08-382-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Stephen D. Wilson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on April 28, 1966, and was forty-one years old at the time of the administrative hearing (Tr. 60). He has a high school education and attended college but did not meet the requirements for an associate's degree (Tr. 388). He has worked as a cashier, cook, and salesman (Tr. 96). The claimant alleges that he has been unable to work since April 23, 2005 because of memory loss, left knee injury (as a result of a motor vehicle accident), heart problems, anxiety, and neck problems (Tr. 95).

**Procedural History**

The claimant applied on August 12, 2005 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Michael Kirkpatrick held an administrative hearing and determined the claimant was not disabled in a written opinion dated February 8, 2008. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step two of the sequential evaluation. He found that the claimant had medically determinable impairments of mild degenerative disc and joint

disease, depression and anxiety, but that none of these impairments, or any combination thereof, had significantly limited the claimant's ability to perform work-related activities for twelve consecutive months (Tr. 14). The ALJ thus found that the claimant was not disabled, as he had no severe impairment (Tr. 21).

## Review

The claimant contends that the ALJ erred by failing to properly consider his mental health limitations. He argues in particular that the ALJ failed to properly consider the opinion of his treating physician, Dr. Don Chesler. The Court finds that the ALJ *did* fail to properly consider the claimant's mental health limitations, and the decision of the Commissioner must therefore be reversed.

On June 19, 2003, the claimant began treatment with Karen Herrod, MSW at Wewoka Mental Health Clinic. At that initial appointment, the claimant reported experiencing anxiety and panic attacks, and stated that he had been talking to a person via telephone who was in the World Trade Towers at the time of the September 11, 2001 terrorist attacks and could hear people screaming, which was a traumatic experience for him (Tr. 160). The claimant hoped to find relief from his anxiety but had "little hope for improvement" at that time (Tr. 160). His GAF was assessed on that day at a 53, and he was noted to be suffering from panic disorder with agoraphobia (Tr. 160). The claimant appeared for another appointment with Ms. Herrod on July 1, 2003, in which she noted that he "was open, oriented, and cooperative" but had a flat affect (Tr. 158). Approximately three weeks later, the claimant appeared for an appointment with Darwin

Moore, Ph.D., who noted that claimant was encouraged to continue treatment, focusing on stress reduction techniques, deep breathing, and visual imagery, and his GAF was assessed at a 55 (Tr. 156).

The claimant first received treatment from Dr. Don Chesler on August 14, 2003, and he noted that claimant noted that claimant was alert and oriented but had an anxious affect (Tr. 149). The claimant was prescribed Xanax at that time. At claimant's October 9, 2003 appointment with Dr. Chesler, the claimant reported that his "anxiety [and] panic got really bad in September" because of the anniversary of the September 11 terrorist attacks (Tr. 144). The claimant continued his treatment with Dr. Chesler, reporting an exacerbation of anxiety in October 2004 (Tr. 124) and feeling better and "getting along well" in January 2005 (Tr. 122). On July 14, 2005, Dr. Chesler noted that claimant had been off work two months because of a motor vehicle accident and had been having "fairly good control" of his panic attacks (Tr. 110), and one month later, Dr. Chesler noted that claimant's insomnia was "prominent" (Tr. 109). The claimant reported feeling about "50%" and exhibited an anxious affect in April 2006 (Tr. 305), and claimant reported having trouble sleeping and that "[t]errorist activities bring up traumatic [thoughts]" (Tr. 304). The claimant reported still feeling "shell-shocked" about 9/11 and reported having flashbacks and nightmares as a result (Tr. 302), and Dr. Chesler wrote that claimant's anxiety remained high and his panic attacks intruded into his life (Tr. 300). In April 2007, the claimant reported "reliving childhood questions," "trying to find out his foundation," and feeling very anxious (Tr. 352). The claimant also reported

"continued difficulty with anxiety," being "unable to concentrate fully," and having "some suicidal thinking" (Tr. 328). In August 2007, claimant's medications included alprazolam (used to treat anxiety disorders and panic attacks), bupropion (to treat depression), fluoxetine (used to treat depression and panic attacks), and temazepam (used to treat insomnia) (Tr. 335).

On October 11, 2007, claimant's treating physician Dr. Chesler completed a Medical Source Statement – Mental, in which he found that claimant suffered from moderate impairments related to the following: 1) ability to remember locations and work-like procedures; 2) ability to understand and remember very short and simple instructions; 3) ability to carry out very short and simple instructions; 4) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 5) ability to work in coordination with or proximity to others without being distracted by them; 6) ability to interact appropriately with the general public; 7) ability to ask simple questions or request assistance; 8) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and 9) ability to respond appropriately to changes in the work setting. Dr. Chesler also found that claimant suffered from marked impairment in the following areas: 1) ability to understand and remember detailed instructions; 2) ability to carry out detailed instructions; 3) ability to maintain attention and concentration for extended periods; 4) ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods; and 5) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 362-63).

The claimant also appeared and testified at an administrative hearing on November 7, 2007, at which he stated that he had been receiving treatment from psychiatrist Dr. Chesler for four years. He testified that he had stopped working in April 2005 because of a car accident, which caused him to suffer three aneurysms (Tr. 394). The claimant testified that he was diagnosed with panic disorder at age 23, but that his mental health deteriorated subsequent to a divorce (in which he lost "everything") (Tr. 395). The claimant had difficulty understanding (and therefore answering) some of the questions asked of him at the hearing, but reported that he had panic attacks daily, which cause him to lose his breath and have "very sharp pain in [his] chest" (Tr. 396). He testified that he has unusual thoughts, *i. e.*, thoughts that he is dying, and that his panic attacks cause him to refrain from going out in public, at times not leaving his house for weeks or a month (Tr. 397). The claimant testified that he experiences periods in which he does not get out of bed and other times (more often) where he will not sleep "much at all" (Tr. 398). He testified that he experienced frequent crying spells, had no sex drive, experiences frequent changes in appetite, and no hobbies (Tr. 399). He also said his memory problems began in 1998 but have worsened considerably over the years (Tr. 401). Finally, he stated that his anxiety was his biggest problem, saying that it "rules what [he does] in [his] life" (Tr. 404).

A claimant has the burden of proof at step two of the sequential analysis to show that he has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a "de minimis" showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

The claimant argues that the ALJ erred in his analysis of the treating physician opinion of Dr. Chesler, *i. e.*, that the ALJ erred by adopting the opinion of state agency examining and non-examining physicians over that of claimant's treating physician. There is some merit to claimant's argument that the ALJ erred by not properly analyzing said opinions in accordance with 20 C.F.R. § 404.1527, as the ALJ failed to specify the weight he was assigning to the opinions of the state physicians. *See Warren v. Barnhart*, 2006 WL 4050700, at *7 (D. Kan. July 10, 2006) (remanding ALJ's decision because it "contain[ed] no analysis of the expert's medical opinion, evaluation of the opinion

pursuant to the regulatory factors, or explanation of how the expert's opinion outweigh[ed] that of the treating physician.") [unpublished opinion]. But the Court finds that the error requiring reversal here is that the ALJ failed to properly analyze the claimant's mental impairment in accordance with the "special technique" set forth in 20 C.F.R. §§ 404.1520a; 416.920a.

"When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a [and § 416.920a] and the Listing of Impairments and document the procedure accordingly." *Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). In conducting a "PRT analysis" pursuant to these regulations, the ALJ must first evaluate whether the claimant has a "medically determinable mental impairment," 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1), and then determine the degree of function that the claimant has lost as a result of the impairment by assessing the claimant's level of functioning in four specific areas. *Cruse*, 49 F. 3d at 617. The four broad areas of function are the following: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and, (iv) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must assess the degree of functional loss in each area on a five-point scale. The first three areas utilize descriptive terms of none,

mild, moderate, marked, and extreme. The fourth area utilizes numerical terms of none, one to two, three, and four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

The ALJ determined, based on the medical evidence of record, that claimant's depression and anxiety were medically determinable impairments (Tr. 13). He was therefore obliged to employ the psychiatric review technique set forth in the regulation to evaluate the extent of the claimant's mental impairment and to document his findings. The ALJ failed to do either, so the decision of the Commissioner must be reversed and the case remanded to the ALJ for the appropriate analysis.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma